UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GUSTAVO R. DELGADO,

                              Plaintiff,          **ORDER**
                                                  10-cv-5710 (ADS) (SIL)

     -vs.-

CODFISH LLC, doing business as UNCLE
BACALA'S, UBR PROPERTIES, LLC, PETER
HEWITSON, JR., and MICHAEL C. DEO,

                              Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**Arthur H. Forman, Attorney at Law**
*Attorney for the Plaintiff*
98-20 Metropolitan Avenue
Forest Hills, NY 11375

**Milman Labuda Law Group PLLC**
*Attorneys for the Defendants Codfish LLC and UBR Properties, LLC*
3000 Marcus Avenue
Suite 3W3
Lake Success, NY 11042
       By: Perry S. Heidecker, Esq, Of Counsel

**Famighetti & Weinick, PLLC**
*Attorneys for the Defendants Codfish LLC, Peter Hewitson, Jr., and Michael C. Deo*
155 Pinelawn Rd
Suite 220S
Melville, NY 11747
       By:  Peter J. Famighetti, Esq.
            Matthew B. Weinick, Esq., Of Counsel


**SPATT, District Judge.**

On December 9, 2010, the Plaintiff Gustavo R. Delgado (the "Plaintiff") commenced this action against his former employer, the Defendant Codfish LLC d/b/a Uncle Bacala's ("Codfish") as well as UBR Properties, LLC ("UBR"); Peter Hewitson, Jr. ("Hewitson"); and Michael C. Deo ("Deo")(collectively the "Defendants") pursuant to the Fair Labor Standards Act, as amended 29

U.S.C. §§ 201 *et. seq* and the New York Labor Law §§ 2, 651, and 198(1-a). The Plaintiff sought unpaid overtime; liquidated damages; and attorneys' fees and costs.

During the pendency of this matter, the Defendants were subjected to a wage and hour audit by the United Stated Department of Labor (the "DOL"). (Heidecker Affid., at ¶ 4.) The DOL determined that certain of the Defendants' employees were owed unpaid wages and overtime. When settlement negotiations failed, the DOL commenced a separate suit, under docket no. 11-cv-435, in the United States District Court for the Eastern District of New York. (Id. at ¶ 5.) That litigation terminated in June 2012 when the parties entered into a court-approved Consent Judgment, under which the Defendants were to pay $420,000 to the DOL on behalf of certain of the Defendants' employees. (Id. at ¶ 6.)

On November 9, 2012, Codfish filed a petition in bankruptcy in the United States District Court for the Eastern District of New York.

It appears that the bankruptcy proceedings concluded in October 2013 and, therefore, the bankruptcy stay was lifted.

On February 12, 2015, counsel for the Defendants filed a letter, with the consent of the Plaintiff's counsel, to advise the Court that the parties had agreed in principal to settle this action. The Defendants' counsel stated as follows: "Counsel have finalized a settlement agreement and general release ("Agreement"), and expects all parties to execute the Agreement over the next couple of weeks." (Doc No. 37.)

On February 13, 2015, the Court closed the case.

On February 27, 2015, counsel for the Plaintiff moved to reopen the case, stating in a letter:

On February 17, 2015, Mr. Delgado came to my office to sign the settlement agreement. We discussed the amount he had agreed to accept in settlement of his claims and my fees as his attorney. He left my office refusing to sign the settlement, claiming that he thought my fees would be paid by defendants and he would receive the entire amount of the settlement. However, the settlement amount defendants had agreed to pay included attorneys' fees.

2

(Doc No. 39.)

On March 3, 2015, the Defendants cross-moved to enforce the settlement agreement. The Defendants contend that the Plaintiff is bound by his counsel's representations regarding attorneys' fees, admitted in the February 27, 2015 letter, and should be compelled to sign the agreement and general release.

A contract as defined under New York law has "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." Fisher v. Int'l Student Exch., Inc., No. CV 13-6519 (LW), 2014 WL 3921364 (E.D.N.Y. Aug. 7, 2014)(citation and quotation marks omitted).

It is well-known that '[p]arties to proposed commercial transactions often enter into preliminary agreements, which may provide for the execution of more formal agreements.'" Sawabeh Info. Servs. Co. v. Brody, No. 11 CIV. 4164 (SAS), 2014 WL 46479, at *10 (S.D.N.Y. Jan. 6, 2014)(citation and quotation marks omitted). "Under New York Law, two types of preliminary agreements create binding obligations." "A [Type I] preliminary agreement binds both sides to their ultimate contractual objective in recognition that, 'despite the anticipation of further formalities,' a contract has been reached." Id. A Type II preliminary agreement is binding only to the extent that the parties are committed to "negotiate the open issues in good faith" to reach their ultimate contractual objective. Id. Because a Type II preliminary agreement "does not commit the parties to their ultimate contractual objective," a party to a Type II preliminary agreement has no right to demand performance of the transaction. Id.

When considering whether an agreement is a Type I preliminary agreement, a court must analyze: (i) "whether there is an expressed reservation of the right not to be bound in the absence of a writing; (ii) whether there has been partial performance of the contract; (iii) whether all of the terms of the alleged contract have been agreed upon; and (iv) whether the agreement at issue is the type of contract that is usually committed to writing." Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005).

Notably, "prime significance attaches to the intentions of the parties and to their manifestations of intent." Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F. Supp. 491, 497 (S.D.N.Y. 1987).

Here, there is no indication that counsel for the Plaintiff expressly reserved a right not to be bound in the absence of a writing nor is there any indication that some of the terms of the alleged contract were not agreed upon. At the same time, there is no indication of partial performance by either side to the alleged contract.

The final factor is whether the agreement at issue is the type of contract that is usually committed to writing. Brown, 420 F.3d at 154. Though that fact is not dispositive, the fourth factor "would better be put in terms of whether in the relevant business community, it is customary to accord binding force to the type of informal or preliminary agreement at issue." Teachers, 670 F. Supp. at 503; see also Grp. 1 Auto., Inc. v. Country Imported Car Corp., No. 07-CV-1454 (RRM)(WDW), 2012 WL 11955634, at *14 (E.D.N.Y. Aug. 15, 2012).

In considering this factor, the Court may look to the complexity of the transaction at issue. See Winston v. Mediafare Entm't Corp., 777 F.2d 78, 83 (2d Cir. 1985). In Reprosystem, B .V. v. SCM Corp., 727 F.2d 257, 262–63 (2d Cir. 1984), the court found that where a transaction involved the sale of six entities for $4 million, "the magnitude and complexity of the deal as reflected in the numerous written contract drafts not only reinforce the parties' stated intent not to be bound until written contracts were signed, but also reflect a practical business need to record all the parties' commitments in definitive documents."

Here, the Court finds that although an agreement to settle this type of action is usually committed to writing, there is no indication that the alleged contract was particularly complex. Indeed, it appears the alleged contract was simply a standard promise by the Defendants to pay a sum certain in exchange for release of the underlying claims.

In sum, the Court finds that two of the four Brown factors – namely, lack of an expressed reservation of right not to be bound in the absence of a writing and agreement to all the terms – weigh

4

in favor of finding a Type I preliminary agreement between the parties. The other two factors do not weigh significantly against such a finding.

As to any misunderstanding between the Plaintiff and his counsel, the Court first notes that counsel did not submit an affidavit on his own behalf or on the Plaintiff's behalf to substantiate this version of events. In any event, where an attorney has "apparent authority" to settle a case, and "opposing counsel has no reason to doubt that authority, the settlement will be upheld" regardless of later protestations by the party to the contrary. Febus v. Guardian First Funding Grp., LLC, No. 10-CV-2590 (SHS), 2015 WL 925917, at *4 (S.D.N.Y. Mar. 4, 2015)(quoting Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989).

Here, counsel for the Plaintiff enjoyed "apparent authority" to settle this case and counsel for the Defendants had no reason to doubt that authority.

Accordingly, the Court holds that the underlying agreement is a Type I preliminary agreement between the parties, enforceable under New York law. For this reason, the Court (1) denies the Plaintiff's motion to reopen the case and (2) grants the Defendants' cross-motion to enforce the settlement agreement. The Plaintiff need not be compelled to sign the agreement to be bound by it. This case remains closed.

**SO ORDERED.**

Dated: Central Islip, New York
March 17, 2015

　　　　　　　　　　　　　　　　　　　　　　　_Arthur D. Spatt_
　　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　　　United States District Judge